**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

**CIVIL ACTION NO. 03-158-JBC**

**KENNETH MOODY, ET AL.,**                                        **PLAINTIFFS,**

**V.**                **MEMORANDUM OPINION AND ORDER**

**COOPER INDUSTRIES, INC., ET AL.,**                     **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the defendants' motion for summary judgment on the wrongful death claims of twenty decedents[1] (DE 159); the defendants' motion for summary judgment against plaintiffs Burma K. Kelly, Virginia A. Sharp, and Debra Harris (DE 160); the defendants' motion for summary judgment on the wrongful death claims for Katherine Miles and Kenneth Ray Fannon (DE 180); the plaintiffs' motion to strike the affidavit of Dr. S. Robert Lichter, Ph.D., from the defendants' memoranda in support of summary judgment (DE 181) and the plaintiffs' motion for leave to file a sur-reply in respect to that motion (DE 200), the defendants' motion for summary judgment against plaintiffs Bettye Moody and David Gilbert, Jr. (DE 184), the plaintiffs' motion to accept a supplemental response to that motion (DE 201), and the defendants' motion to seal an exhibit to their response to the plaintiffs' motion (DE 207); and the plaintiffs'

---

[1] Ollice Bailey, Conley Cornett, Alva Elliot, Daisy Kirk, Willie Leath, George Middleton, Herman Saylor, Betty Lou Turner, Gary Laws, Helen Marie Saylor, Delmore Stewart, William Duncan, Harmon Griffin, Beatrice Maggard, Andromahi Saragas, Cleta Osborne Robinson, Jack Scarbrough, Jr., David Lankford, Ruby Williams, and Thomas Saunders.

alternative motion for Rule 41(a) dismissal of the claims by plaintiffs Debra Harris

and Virginia A. Sharp (DE 197) and Bettye Moody and David Gilbert, Sr. (DE 195[2]).

This matter is one of several cases arising out of contamination caused by

chemical emissions from the National Electric Coil ("NEC") plant in Harlan County,

Kentucky.

> In February 1989, Kentucky officials discovered that
> the groundwater wells adjacent to the NEC plant were
> contaminated. According to the defendants, after discovery
> of the contamination, Cooper Industries paid for and
> installed city water lines near the plant so that residents
> would no longer need to rely on the contaminated wells for
> their water. Between 1990 and 1992, over 500 plaintiffs
> filed actions in this court seeking damages relating to the
> contamination. Several actions were consolidated into what
> has been referred to as the "*Robinett* litigation," which went
> to trial in April of 1996. The *Robinett* litigation was settled
> in October of 1996, with payments being made to the
> plaintiffs in November of that same year. The
> Environmental Protection Agency established for the NEC
> plant a clean-up plan which has been in place since 1992.

*Blanton v. Cooper Indus., Inc.*, 99 F. Supp. 2d 797, 799 (E.D. Ky. 2000). In

October 1997, a class action was filed in the Harlan Circuit Court on October 6,

1997. *Lankford, et. al. v. Cooper Indus., et. al.*, No. 97-CI-00670 (Harlan Cir. Ct.

1997). The class was later decertified, and many of the plaintiffs in that case

settled. Pursuant to the settlement agreement reached in that case, the statute of

limitations for actions by plaintiffs who fit the class description was tolled from the

---

[2] The alternative motion for Rule 41(a) dismissal as to Ms. Moody and Mr. Gilbert is contained in the plaintiffs' response to the defendants' motions for summary judgment as to Bettye Moody, David Gilbert, Sr., and the estates of Katherine Miles and Kenneth Ray Fannon.

date the action was filed through April 1, 2004. The publicity surrounding the discovery of the contamination is discussed below. This lawsuit was filed on February 13, 2003, and the complaint alleges various claims for wrongful death and personal injury.

## I.    The Defendants' Motions for Summary Judgment

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party's burden can be satisfied by demonstrating that there is an absence of evidence to support the non-moving party's case. *Id.* at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56 (e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.    Defendants' Motion for Summary Judgment as to Twenty Decedents (DE 159)

Under Kentucky law, a wrongful death claim may be brought only by an appointed estate representative, and the claim must be filed within one year of the representative's appointment and no later than two years after the decedent's

death.  *Conner v. George W. Whitesides Co.*, 834 S.W.2d 652, 655 (Ky. 1992).

The defendants assert that they are entitled to summary judgment on the wrongful

death claims filed on behalf of Ollice Bailey, Conley Cornett, Alva Elliott, Daisy Kirk,

Willie Leath[3], George Middleton, Herman Saylor, Betty Lou Turner, Gary Laws,

Helen Marie Saylor, Delmore Stewart, William Duncan, Haron Griffin, Beatrice

Maggard, Andromahi Saragas, Cleta Osborne Robinson, Jack Scarbrough, Jr.,

David Lankford, Ruby Williams, and Thomas Saunders based on their failure to

satisfy these requirements.  The plaintiffs respond that lack of appointment of a

representative is a correctable defect, and the statute of limitations was tolled by

the defendants' fraudulent concealment of or misleading the plaintiffs as to material

facts and because of the pendency of the class action in Harlan Circuit Court

between October 6, 1997, and April 1, 2004.

### 1.    Appointment of a Personal Representative

A wrongful death action must be prosecuted by the decedent's personal

representative.  K.R.S. 411.130(1); *Southeastern Ky. Baptist Hosp. v. Gaylor*, 756

S.W.2d 467, 470 (Ky. 1988).  Kentucky Rule of Civil Procedure 15.03(1) governs

the relation back of amendments to the original pleadings: "[w]henever the claim or

defense asserted in the amended pleading arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original pleading, the

---

[3] The wrongful death claim asserted on behalf of Willie Leath has been
voluntarily dismissed, and the court will therefore not address its viability in this
order.

amendment relates back to the date of the original pleading." That rule has been interpreted to allow the amendment of a complaint to substitute the real party in interest as a plaintiff even after the statute of limitations has run, if the defendant's ability to prepare his case is not prejudiced by the delay. *Richardson v. Dodson,* 832 S.W.2d 888 (Ky. 1992); *Modern Bakery, Inc. v. Brashear*, 405 S.W.2d 742, 743-44 (Ky. 1966).

The defendants contend that *Richardson* is distinguishable, because the amendment reflecting the plaintiff's appointment as personal representative in that case was filed as a matter of right, before any responsive pleading had been filed. The court in *Richardson* acknowledged that the plaintiff lacked capacity to assert the claim when it was filed, but found that the filing of the complaint nonetheless tolled the statute of limitations, because it gave the defendant notice of the claims against him. *Id.* at 889-90. The court found that the amendment therefore related back to the original complaint under Rule 15.03(1), because the plaintiff had attempted to state a claim for wrongful death in the earlier pleading. *Id.* at 889.

The court in *Modern Bakery* held that an amendment to change the plaintiff's capacity was not a new cause of action and did not constitute a change to the parties before the court. *Modern Bakery*, 405 S.W.2d at 744. The amendment therefore related back to the original pleading pursuant to Rule 15.03(1). *Id.* That court went so far as to say that an amendment to correct the status of the plaintiff could be made even after judgment had been rendered and set aside for the error. *Id.* But see *Everley v. Wright*, 872 S.W.2d 95, 97-98 (Ky. Ct. App. 1994) (no

relation back where amendment made after trial).

In their motion, the defendants stated that no personal representative had ever been appointed for the estates of Ollice Bailey, Conley Cornett, Alva Elliott, Daisy Kirk, Willie Leath, George Middleton, Herman Saylor, Betty Lou Turner, Gary Laws, Helen Marie Saylor, or Delmore Stewart.  The plaintiffs corrected the defendants in their response memorandum, and the court finds that personal representatives have been appointed for each of the decedents.  Insofar as the defendants contest the validity of amendments to the complaint to reflect the appointment of a personal representative after the filing of the suit or more than two years after the decedent's death, the court finds generally that such an amendment –  one made well before trial and in a situation in which there is no question that the defendants are fully aware of the allegations against them regardless of who is named as the plaintiff –  is not detrimental to the defendants' ability to prepare their defense and shall relate back to the initial filing of the complaint pursuant to the rationale adopted in *Richardson* and *Modern Bakery*. Therefore, as long as the plaintiffs' claims were timely filed but for the error as to the personal representative or named plaintiff and the correction of that error does not prejudice the defendants, summary judgment in favor of the defendants is not warranted on that basis.

2.    Statute of Limitations

The plaintiffs contend that the failure to file suit within two years of the decedents' deaths or one year of the appointment of a personal representative is

6

not fatal to their claims, because the limitations periods were tolled by the defendants' fraudulent concealment of their wrongdoing and in accordance with the tolling agreement reached in the class action lawsuit filed in Harlan Circuit Court on October 6, 1997.

> a.   *Defendants' Concealment*

The defense of the statute of limitations may not be asserted by a defendant who induced the failure to timely file suit by fraudulently concealing information, preventing the plaintiff from inquiring into the action, eluding investigation by the plaintiff, or otherwise misleading the plaintiff.  *Hazel v. General Motors Corp.*, 863 F. Supp. 435, 439 (W.D. Ky. 1994), *see also* K.R.S. § 413.190(2).  Conversely, the plaintiffs have an obligation to exercise reasonable care and diligence to discover whether they have a viable legal claim.  *Id.*  If the defendant is estopped from raising the statute of limitations because of his wrongdoing, the statute of limitations begins to run when the plaintiff learns of the unlawful act.  *Id.*

Tolling will apply if "under all the facts and circumstances the plaintiff was justified in relying upon the representations and activities of the [defendant] in delaying filing suit until time had run out."  *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 642-43 (6th Cir. 1986) (*quoting Miller v. Thacker*, 481 S.W.2d 19, 23 (Ky. 1972)).  The Sixth Circuit applies a three-part test to determine whether the statute of limitations should be tolled due to a defendant's wrongdoing: (1) the defendant must have wrongfully concealed its actions; (2) the plaintiff must have failed to discover the operative facts that form the basis of his action within the limitations

7

period; and (3) the plaintiff must have exercised due diligence prior to discovering the operative facts. *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1001-1002 (6th Cir. 1994); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). The defendant's conduct must also have been the reason the plaintiff did not proceed with legal action. *Blanton,* 99 F. Supp. 2d at 804 (*quoting Reuff-Griffin Decorating Co. v. Wilkes*, 191 S.W.443, 446 (1917)).

The plaintiffs allege that the defendants affirmatively misled them as to the nature of their misconduct and the geographic distribution of the contamination, which prevented the plaintiffs from discovering their causes of action. The plaintiffs claim that, among other things, the defendants represented that the pollution was not severe enough to cause illness; the contamination was limited to the "ground water plume"; surface contamination had been remedied so as to obviate the need for soil removal; any air pollution was insignificant and limited to the immediate proximity of the plant; and no PCBs were used in the oil-fired boiler.

This court rejected an argument for equitable tolling based on fraudulent concealment in *Blanton*, because the plaintiffs did not produce specific facts indicating that the concealment actually caused them not to file suit. *Blanton,* 99 F. Supp. 2d at 804. Similarly, in this case, the plaintiffs have not put forth any evidence that they would have filed suit but for the defendants' alleged misrepresentations or that they filed suit as soon as they learned of the defendants' actions.

The plaintiffs have also failed to offer any proof that they exercised due

8

diligence in seeking to discover the cause of their injuries despite any concealment by the defendants. *See Noble*, 32 F.3d at 1001-1002; *Dayco*, 523 F.2d at 394. The plaintiffs' assertion that they had no reason to know of their potential exposure by virtue of the manner in which the contamination was publicized does not remedy the absence of any indication that they diligently sought to discover the cause. The plaintiff has the burden of establishing the applicability of equitable tolling, *Pinney Dock & Transp. Co. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988), and in the absence of responsive evidence that it is appropriate, the plaintiffs' complaint is insufficient to excuse the failure to timely file their actions. Ollice Bailey, Cleta Osborne Robinson, Betty Lou Turner, Conley Cornett, and Alva Elliott rely, at least in part, on the defendants' fraudulent concealment as grounds for tolling the statute of limitations for their claims; because equitable tolling is not applicable, these plaintiffs' claims are time-barred, and the defendants are entitled to summary judgment against them.

> b.   *Harlan Circuit Court Class Action*

The plaintiffs further contend that, for plaintiffs who died between October 6, 1997, and April 1, 2004, and who fit the description of the class of plaintiffs in the Harlan Circuit Court litigation, the limitations period was extended until April 1, 2005, pursuant to the terms of a 2002 settlement agreement. The plaintiffs assert that William Duncan, Harmon Griffin, Daisy Kirk, David Lankford, Gary Laws, Beatrice Maggard, George Middleton, Andromahi Saragas, Thomas Saunders, Helen Marie Saylor, Herman Saylor, Jack Scarborough, Jr., Delmore Stewart, and Ruby

9

Williams fit the class description, died within the tolling period, and timely filed their complaints within one year of April 1, 2004.

Jack Scarborough, Jr., David Lankford, George Middleton, and Thomas Saunders all fit the class description and died during the pendency of the class action. Their personal representatives were appointed within one year of their deaths. Ruby Williams died during the class period, meets the criteria for inclusion in the class, and had a personal representative appointed within two years after she died. The appointment of a personal representative within two years of a decedent's death relates back to the one-year anniversary of that death. *Conner*, 834 S.W.2d at 655. Because these plaintiffs fit the class description, died during the tolling period, and their estates were timely appointed class representatives, the one-year statute of limitations for filing their claims after the appointment of their personal representatives did not begin to run until April 1, 2004. Each of their claims in this lawsuit was filed before April 1, 2005, and their claims are therefore not time-barred.

As to the remaining plaintiffs, the defendants contend that they could not have joined the class action, because personal representatives had not been appointed within two years of their deaths. The pendency of a class action will toll the statute of limitations as to a particular party only if that party could have brought his claim in the class action lawsuit. *Weston v. Ameribank*, 265 F.3d 366, 368 (6th Cir. 2001). The defendants' argument is dependent upon their position that the tolling effect of a pending class action does not apply to the two-year

10

limitation on the appointment of a personal representative in a wrongful death claim and that post-filing amendment of a complaint to name a proper plaintiff does not relate back to the original filing.

In the wrongful death context, the appointment of a personal representative, like the filing of the claim within one year of its accrual, is a prerequisite to maintaining a lawsuit. The tolling doctrine effectively suspends a claimant's duty to act, and the court finds that the suspension applies both to the filing of the claim and to the appointment of a personal representative. As discussed above, defects with regard to the appointment of a personal representative are curable if the amendment does not prejudice the defendants. *See Richardson,* 832 S.W.2d at 889-90; *Modern Bakery*, 405 S.W.2d at 744. The court therefore finds that if a wrongful death claim is filed within one year after the cause of action accrues, and a personal representative is named as the party in interest within two years after the cause of action accrues and before a trial is conducted or judgment is rendered, the complaint may be amended to name the appropriate person as the plaintiff, and the statute of limitations will not be violated.

In this case, because the plaintiffs fit the class description and died within the tolling period, the statute of limitations on their claims did not begin to run until April 1, 2004. All of their claims were filed prior to April 1, 2004, and all of their estates had been appointed personal representatives before April 1, 2005. Therefore, on the facts of this case, the court finds that their claims are not barred by the statute of limitations, and the defendants' motion for summary judgment as

to them will be denied.

Gary Laws and Andromahi Saragas satisfy the class criteria and died during the class period.  Their personal representatives were appointed more than two years from their deaths but during the tolling period afforded to potential class members.  They filed suit in this case prior to April 1, 2005.  Their filing and appointment of a personal representative were therefore timely, and the defendants are not entitled to summary judgment on their claims.

Daisy Kirk, Herman Saylor, Helen Marie Saylor, Delmore Stewart, William Duncan, Harmon Griffin, and Beatrice Maggard also fit the class description and died during the tolling period effectuated by the *Lankford* settlement.  Their personal representatives were not appointed within two years of their deaths and claims were not filed within the tolling period applicable to the class action.  Their claims in this case were filed prior to April 1, 2005.  The defendants contend, however, that the class action tolling period is not available to them, because the failure to have a personal representative appointed during the class action means that they could not have participated in that case.  *See Weston*, 265 F.3d at 368. As discussed above, the court finds that the two-year time limit on the appointment of a personal representative was suspended until April 1, 2005, for anyone who fit the class description and died between October 6, 1997, and April 1, 2004. Therefore, the defendants' motion for summary judgment as to these plaintiffs will be denied.

**B.**   **Defendants' Motion for Summary Judgment Against Plaintiffs Burma**

### K. Kelly, Virginia A. Sharp, and Debra Harris (DE 160)

1. *Statute of Limitations*

The statute of limitations for filing a personal injury claim in Kentucky is one year after the cause of action accrues.  K.R.S. 413.140(1).  The defendants contend that they are entitled to summary judgment as to the claims by Burma K. Kelly, Virginia A. Sharp, and Debra Harris, because those plaintiffs either knew or should have known that their cancers may have been caused by the toxic emissions from the NEC plant more than one year before they filed suit, and their claims are therefore barred by the one-year statute of limitations imposed by Kentucky law.  The plaintiffs argue in response that not all persons who learned of the contamination had a duty to investigate immediately whether they had a claim against the defendants, and Ms. Harris and Ms. Sharp did not and had no reason to suspect that their health problems were related to it.  The plaintiffs concede that the defendants are entitled to summary judgment as to Ms. Kelly.  Ms. Harris and Ms. Sharp do not fit the description of the class in the Harlan Circuit Court litigation, and the tolling period associated with that action is therefore not applicable.[4]

As discussed above, the statutes of limitation in this case were not tolled by the defendants' alleged misrepresentations and fraudulent concealment of pertinent

---

[4] Ms. Harris stated in her answer to the defendants' interrogatories that she experienced residential disclosure in Dayhoit, which would qualify her for inclusion in the class action tolling protection.  Actually, Ms. Harris lived in Fresh Meadows, and therefore would not have been able to participate in the class action lawsuit.

information, because the plaintiffs cannot demonstrate that the alleged misconduct caused them to delay bringing suit or that they exercised reasonable diligence in discovering the cause of their injuries.

The discovery rule imposes a similar obligation of diligence.  Under the discovery rule, applicable in cases involving latent disease, a cause of action does not accrue "until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct."  *Louisville Trust Co. v. Johns-Manville Products Corp.*, 580 S.W.2d 497, 501 (Ky. 1979).  Reasonable diligence is "a degree between absolute inaction and an extreme effort undertaken against apparent futility."  *Gray v. Sawyer*, 247 S.W.2d 496, 498 (Ky. 1952).  If the plaintiff knows of any fact that should raise his suspicion, that is the equivalent of actual knowledge of the entire claim.  *Hazel v. General Motors Corp.*, 863 F. Supp. 435, 440 (W.D. Ky. 1994).  "[T]he means of knowledge are the same thing as knowledge itself."  *Id.*

The date upon which the party discovers that there is a cause of action is irrelevant to the application of the discovery rule.  *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1982).  The motion for summary judgment requires the court to determine whether Debra Harris and Virginia Sharp should have known, more than one year prior to November 4, 2003 (the date on which they joined this lawsuit), that the defendant's conduct may have caused their injuries.  Although whether a plaintiff should have known the cause of his injury is typically not determinable on

14

summary judgment, *see Imes v. Touma,* 784 F.2d 756, 758 (6th Cir. 1986), because the plaintiffs can prove no set of facts to support a finding that they should not have known of the connection, summary judgment is nonetheless appropriate.

This court granted summary judgment to the defendants in an earlier case on the basis that certain plaintiffs, Kaye Blanton and Terry Farley, should have known of the cause of their injuries and did not exercise due diligence to discover the cause prior to the running of the statute of limitations. *Blanton*, 99 F. Supp. 2d 797. As in this motion, those plaintiffs lived in Harlan, Kentucky, but never in Dayhoit, which is where the media attention was concentrated. The publicity that should have alerted the plaintiffs in that case is identical to that which should have alerted Ms. Harris and Ms. Sharp:

> According to the defendants, the contamination of the NEC plant, the *Robinett* litigation, and allegations that exposure to chemicals from the NEC plant caused cancer and other health concerns were the subject of widespread reports by local, regional, and national media. From 1989 through 1994, the controversy surrounding the NEC plant was the subject of over 80 articles in the local newspaper, the *Harlan Daily Enterprise*, and 44 articles in three other regional newspapers. Many of these articles referred to cancer as a potential health hazard of the contamination.
>
> The plaintiffs point out that when the media referred to the "Dayhoit community," Harlan County residents knew the exact location referred to and whether or not they were included. Harlan County is not one homogenous community that is synonymous with the "Dayhoit community." Rather, there are many distinct residential communities in Harlan County, and the residents know the distinctions and differences among Dayhoit, Fresh Meadows, Ewing Creek, White Star Hollow, Watts Creek, Tremont, Keith, and other

15

community designations.  According to the plaintiffs, none of the articles reported that the contamination had extended into the Watts Creek community.  There was also no coverage of an alleged "air plume" that reached all of the communities mentioned above which resulted from the defendants' alleged practices of burning hazardous waste in an oil-fired boiler.

After the contamination came to light, Joan Robinett and others formed a local community group called Concerned Citizens Against Toxic Waste ("CCATW"). According to the defendants, CCATW held at least one demonstration warning of contamination by the NEC plant and was also responsible for addressing health hazards caused by the plant's operations, holding regular public meetings to discuss these issues.  The U.S. Department of Health and Human Services' Agency for Toxic Substances and Disease Registry held a "public availability meeting" in Harlan in April of 1992.  A subsequent report by the Department dated November 1994 addressed the community health concerns resulting from the contamination.

Joan Robinett and CCATW also conducted a survey of Harlan County residents titled the "Dayhoit Listening Project."  The purpose of this survey was to gather information from people in Harlan County and to inform them that they could get assistance with medical problems related to the NEC plant contamination.  Teams were trained to go door-to-door to community homes and personally interview residents by asking the questions on the survey, which related to the sources of residential water, contamination of the water, health problems related to the contamination, the community's desire for medical monitoring, etc.  According to the plaintiffs, this survey was conducted in January of 1991 and did not extend into the Watts Creek community but was limited to the Dayhoit community.

*Id.* at 799-800.  Many Harlan County residents were also part of the *Lankford* class

action in the Harlan Circuit Court.

The court rejected the plaintiffs' argument in *Blanton*, finding that "a person

16

exercising reasonable diligence would have discovered the cause of the injuries"
more than one year prior to the filing of the lawsuit. *Id.* at 802. Mr. Farley was
essentially illiterate, and he claimed not to have had any knowledge relevant to the
NEC-plant contamination. *Id.* at 800. The court found that, even if his assertions
of ignorance were true, he had "failed to exhibit the qualities of 'attention,
knowledge, intelligence and judgment' that society requires of its members for their
own protection." *Id.* at 802-803 (*quoting Cappelli v. York Operating Co.*, 711 A.2d
481, 488 (Pa. Super. Ct. 1998)).

Debra Harris lived in Harlan County from 1989 to 1991; although she never
lived in Dayhoit, her residence in Fresh Meadows was in such close proximity to
Dayhoit that she stated in her answers to interrogatories that she suffered
residential exposure while living there and referred to her home as having been in
Dayhoit. She was diagnosed with breast cancer in 1990 and eventually underwent
a mastectomy in 1991. In her deposition, Ms. Harris testified that she remembers
people talking about the ground water contamination in Dayhoit by at least May
1992. She was also aware of Joan Robinett's activities with CCATW and the
group's concern with the ground water contamination. Although she knew that the
contamination allegedly caused cancer, she never made the connection that it
applied to her.

Virginia Sharp was diagnosed with uterine fibroids and ovarian cancer in
1981, and she received chemotherapy from 1981-82. Around 1989-90, she read
newspaper articles reporting the alleged cancer-causing effects of the chemicals

17

emitted at the NEC plant, and she testified that she knew people in the community were talking about the health implications of the contamination. Ms. Sharp believed, however, that the problems were isolated in Dayhoit, and she did not live there. Ms. Sharp joined this lawsuit on November 4, 2003.

Debra Harris and Virginia Sharp were more capable than Mr. Farley of discerning the causal link between the controversy in Dayhoit and their own illnesses; unlike Mr. Farley, they at least were aware of the allegedly harmful effects of various emissions from the NEC plant. Ms. Harris and Ms. Sharp were under the same duty of inquiry to which the court held Farley and Blanton; if they had made a reasonable inquiry, they, like previous non-Dayhoit resident plaintiffs, would have "put two and two together and conclude[d] that the NEC plant was the cause of the injuries" more than one year prior to the filing of this lawsuit. Even assuming that the causal connection between the NEC contamination and residents of nearby communities could not have been made prior to the development of the air plume theory in the 1996 *Robinett* litigation trial and that, even then, that information was disseminated only on a limited, as-needed basis, Ms. Harris and Ms. Sharp should have suspected the relationship well before November 4, 2002.[5] Therefore, under the discovery rule, their claims must be dismissed as barred by the one-year statute of limitations applicable to personal injury actions.

---

[5] Even if Ms. Harris's claim qualifies for inclusion in the class action tolling period by virtue of her asserted residence in Dayhoit, she nonetheless should have known of the potential link more than one year before the class action lawsuit was filed by virtue of that close proximity, and her claim would still be time-barred.

18

**C.     The Defendants' Motion for Summary Judgment on the Wrongful Death Claims as to Katherine Miles and Kenneth Fannon (DE 180)**

Katherine Miles and Kenneth Fannon's personal representatives were appointed in states other than Kentucky.   The defendants argue that they are entitled to summary judgment on their wrongful death claims, because appointment as a personal representative in another state does not support maintenance of a wrongful death claim in Kentucky.   The plaintiffs respond that the defect in opening ancillary estates in Kentucky can and will be corrected and is not a basis for dismissal of their claims.   For the same reasons discussed above with respect to the motion for summary judgment as to twenty decedents, the court finds that the defect as to status of the named plaintiff is curable and does not justify granting summary judgment in favor of the defendants.

**D.     The Defendants' Motion for Summary Judgment Against Bettye Moody and David Gilbert, Sr. (DE 184)**

In support of their motion for summary judgment against Bettye Moody and David Gilbert, Sr., the defendants assert that, like Burma K. Kelly, Virginia A. Sharp, and Debra Harris, these plaintiffs knew or should have known of the potential connection between their cancers and the contamination.   The plaintiffs contend that Ms. Moody and Mr. Gilbert had no reason to suspect the connection, and they are protected by the tolling of the statute of limitations.   The court has already determined that equitable tolling based on the defendants' conduct does not apply.

Ms. Moody claims that she satisfies the class criteria, because she made

19

frequent trips to her children's babysitter's home in Dayhoit.  The defendants reply that the class certification limited membership to those persons who lived or worked in the area, regularly stayed with family in the area, or frequently attended school or church in the area.  Ms. Moody's visits to her children's babysitter's home is outside the class description, and her claims for any injury discovered during the pendency of the class action are not protected by the tolling period.  Therefore, any of her claims that were or should have been discovered more than one year before February 13, 2003, the date on which she filed the instant suit, must be dismissed.

Bettye Moody has lived in Rio Vista in Harlan County, but she has never lived in Dayhoit.  Among other health problems, she had a hysterectomy in 1985 because of an ovarian cyst; she was diagnosed with fibrocystic breast disease with accompanying calcifications in the 1980s; she was diagnosed with and treated for a precursory form of breast cancer in 1994; and in 1999 she was diagnosed with thrombocytopenia.  Ms. Moody read articles and heard gossip about the possible contamination in Dayhoit no later than 1994, and she was aware of the *Robinett* litigation.  However, she states that she never did and still does not think that she was exposed to the Dayhoit water contamination, and she never believed that being a mere visitor to Dayhoit put her at risk for any adverse effects from the contamination there.  She indicates that she learned that Rio Vista residents might be affected only in the summer of 2002, when other Harlan County residents encouraged her to consult an attorney concerning her daughter Susan's recent

20

death.

For the same reasons discussed above with respect to Ms. Sharp and Ms. Harris, the court finds that Ms. Moody should have known, prior to February 13, 2002, that her illnesses may have been related to the NEC plant contamination. Ms. Moody's claims are therefore barred by the one-year statute of limitations, and the court will grant the defendants' motion for summary judgment as to her.

David Gilbert, Sr., filed a complaint in this case on November 4, 2003, prior to the expiration of the tolling period applicable to the *Lankford* litigation. Mr. Gilbert meets the qualifications for the Harlan Circuit Court class action, because he worked and regularly visited family in the area. The defendant is entitled to summary judgment on his claim only if he should not have known of the connection between the NEC contamination and his illness more than one year prior to the filing of that lawsuit in October 1997.

Mr. Gilbert testified that he recalls seeing newspaper articles about the NEC plant contamination in 1989, though he never read them carefully. Mr. Gilbert stated that he was familiar with the 1997 *Lankford* litigation against Cooper Industries, but he did not think it related to him. Although Mr. Gilbert knew 68 of the *Robinett* plaintiffs, he claims to have been unaware that any of them were involved in that lawsuit.

Mr. Gilbert was diagnosed with bladder cancer in 1993. The critical date for Mr. Gilbert's claim is October 6, 1996; if he should have known of the link between the contamination and his cancer prior to that date, his claim is untimely.

21

The *Lankford* litigation occurred entirely after that date, and his knowledge of the class action is therefore not pertinent to whether he should have suspected the causal link by October 1996. The *Robinett* litigation began in 1990, but the nature of his familiarity with that case is unclear, and the trial and settlement, of which he might be expected to have been aware, did not occur until 1996. The court therefore finds that Mr. Gilbert has put forth sufficient evidence that whether he should have been aware that his 1993 bladder cancer diagnosis may be related to the NEC plant contamination prior to October 6, 1996, is a factual issue not appropriate for resolution by the court.

II.   **Plaintiffs' Motion for Acceptance of Supplemental Response to the Defendants' Motions for Summary Judgment as to Debra Harris, Virginia Sharp, and Bettye Moody (DE 201)**

In their motion to accept their supplemental memorandum, the plaintiffs state that the defendants' contention in their reply memorandum that the air plume theory was fully developed by 1996 raised the issue that, even if the plaintiffs had made a diligent inquiry into the cause of their illnesses, their probe would not have revealed a causal link. The plaintiffs neglected to develop that argument in either their response to the defendants' motion for summary judgment against Debra Harris and Virginia Sharp or their subsequent response to the substantively identical motion with regard to Bettye Moody. The defendants therefore oppose the supplemental brief, because the arguments, law, and facts contained therein were available to the plaintiffs on previous occasions when they addressed the timeliness of the plaintiffs' claims.

22

The local rules do not provide for briefs beyond those in support of, in response to, and in reply to a motion, and the plaintiffs have not pointed to any circumstance justifying their failure to respond fully to the defendants' argument in their responses.  The defendants' January 29, 2006, reply respecting the motion as to Virginia Sharp and Debra Harris did not raise any new arguments to which the plaintiffs need an opportunity respond.  The court will therefore deny the plaintiffs' motion for acceptance of their supplemental response.

III.   **Plaintiffs' Alternative Motions for Rule 41(a) Dismissal (DE 195, 197)**

Having found that the claims asserted by Debra Harris, Virginia Sharp, Bettye Moody, and David Gilbert, Sr., are time-barred, the court turns to their alternative motions for Rule 41(a) dismissal to preserve the right to sue at a later date if more serious medical conditions develop.  In support of their motions, the plaintiffs cite *Carroll v. Owens-Corning Fiberglass Corporation.*  37 S.W.3d 699 (Ky. 2001).  The defendants argue in opposition that plaintiffs in toxic tort cases must choose whether to file suit upon an initial injury for compensation for all present and future consequences of the exposure or wait and file suit for a later, more severe illness that may develop.  Plaintiffs may not, the defendants contend, immediately sue upon diagnosis and agree that, if that claim is unsuccessful, they will wait and seek recovery for a later-manifesting illness.

In Kentucky, personal injury plaintiffs must sue for all injuries arising out of a single transaction in the same action.  *Id.* at 700.  In the context of toxic torts, a plaintiff may elect not to sue for one disease but instead to pursue a claim for a

subsequently developed disease, in which case the claim for the initial disease is waived, and the cause of action for the latter accrues on the date of its diagnosis. *Id.* at 700, 703. Dismissing the plaintiffs' claims without prejudice pursuant to Rule 41(a) would enable them to split their claims and maintain separate suits based on different consequences of the same exposure, which is contrary to Kentucky law. Therefore, the court will deny the plaintiffs' alternative motion for Rule 41(a) dismissal.

**IV.   The Plaintiffs' Motion to Strike the affidavit of Dr. S. Robert Lichter, Ph.D. (DE 181) and the Defendants' Motion for Leave to File Sur-Reply (DE 200)**

The court did not rely on Dr. Lichter's affidavit in resolving the defendants' motions for summary judgment, and the plaintiffs' motion to strike will therefore be denied. The defendants' motion for leave to file a sur-reply to the plaintiffs' motion will be denied as moot.

**V.   Defendants' Motion to Seal Exhibit (DE 207)**

The exhibit submitted with the defendants' response to the plaintiffs' motion to accept supplemental response contains personal information, including social security numbers. The plaintiffs do not object to sealing the document, and the court will grant the motion.

Accordingly, **IT IS ORDERED** as follows:

(1)   The defendants' motion for summary judgment on the wrongful death claims of twenty decedents (DE 159) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Ollice Bailey, Cleta Osborne Robinson, Betty Lou Turner, Conley Cornett, and Alva Elliott. The motion is **DENIED** as to William Duncan, Harmon Griffin, Daisy Kirk, David Lankford, Gary Laws, Beatrice Maggard, George Middleton,

24

Andromahi Saragas, Thomas Saunders, Helen Marie Saylor, Herman Saylor, Jack Scarborough, Delmore Stewart, and Ruby Williams.

(2)    The defendants' motion for summary judgment as to Burma K. Kelly, Virginia A. Sharp, and Debra Harris (DE 160) is **GRANTED**.

(3)    The defendants' motion for summary judgment on the wrongful death claims of Katherine Miles and Kenneth Fannon (DE 180) is **DENIED**.

(4)    The defendants' motion for summary judgment against Bettye Moody and David Gilbert, Sr., (DE 184) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** as to Bettye Moody, and it is **DENIED** as to David Gilbert, Sr.

(5)    The plaintiffs' motion for acceptance of supplemental response to the defendants' motions for summary judgment against Debra Harris, Virginia Sharp, and Bettye Moody (DE 201) is **DENIED**.

(6)    The plaintiffs' alternative motions for dismissal of claims by Debra Harris, Virginia Sharp, Bettye Moody, and David Gilbert, Sr., pursuant to Rule 41(a) (DE 195, DE 197) are **DENIED**.

(7)    The plaintiffs' motion to strike the affidavit of Dr. Robert S. Lichter (DE 181) is **DENIED**.

(8)    The defendants' motion to file a sur-reply to the plaintiffs' motion to strike (DE 200) is **DENIED**.

(9)    The defendants' motion to seal an exhibit to their response to the plaintiffs' motion to accept supplemental response (DE 207) is **GRANTED**.

Signed on May 3, 2006

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY